T. E. McCAMMON, Appellee, v. EDDIE W. AKERS, Appellant. No. 93. —436 S.W.(2d) 457.

Eastern Section. August 6, 1968.

Certiorari Denied by Supreme Court December 16, 1968.

Ely & Ely, Knoxville, for appellant.

Morton, Morton & Lewis, Knoxville, for appellee.

PER CURIAM.

Complainant, T. E. McCammon, filed this original bill in chancery averring the defendant, Eddie W. Akers, was asserting ownership and barring the use of a right-of-way through property owned by the defendant. From

the chancellor's decree sustaining the original bill and enjoining the defendant from obstructing or interfering with complainant's use, possession and enjoyment of the said right-of-way, defendant has appealed.

The proof shows that both complainant's and defendant's property comes from a common source. At one time W. E. McCammon, father of the complainant, owned both tracts of property. T. E. McCammon first obtained his property by a warranty deed from W. E. McCammon in 1916. In the same year W. E. McCammon deeded to his daughter, Angie Brooks, a sister of complainant, the tract of land now owned by defendant Akers. In the deeds from W. E. McCammon to complainant and Angie Brooks there is no provision for a right-of-way across defendant's property. In 1932 complainant McCammon brought suit in the chancery court against his sister, Angie Brooks, seeking to establish a right-of-way across her property. The final decree in this suit states:

"* * * that when William McCammon purchased the property conveyed to complainant in 1885, that there was a roadway leading from the said property which now belongs to complainant, over, through and across the property adjoining, which in 1885 was owned by Mary E. Michaels, to the Pickens Gap Pike, and that complainant's father and family made use of said roadway across the said Michaels property from that time until his death in 1930; that the topography of the country is such that said roadway is not only complainant's best means of ingress and egress to his property, but that at certain times of the year is the only means of ingress and egress; that the only other roadway is several times as long as this direct route leading through the defendant's property and at certain times

of the year is impassable; that said roadway over the defendant's property was there at the time complainant received his deed for his property.

"It is therefore ordered, adjudged and decreed that the complainant has a right or easement over said roadway through and across said property of the defendant Angie Brooks by implication and by necessity and that the injunction heretofore issued restraining the defendants from hindering, obstructing or molesting the complainant or any member of his family or agents, employees or renters in the use, possession and enjoyment of said roadway leading from the said Pickens Gap Pike to complainant's property is hereby made perpetual."

In the deed from Angie Brooks to Rawlings and Rogli dated August 8, 1956, is the following recitation: "A right-of-way across first tract to the Mary E. McCammon tract south of same."

In 1937 these purchasers conveyed this property to Oscar C. Schwarzenberg, et ux, and included in the deed the following language: "An easement across the first tract above for ingress and egress to lands lying to the south as road is located."

In 1964 Schwarzenberg conveyed to Chittum, Trustee, without mention of any right-of-way. Likewise the deed of February 11, 1965 from Chittum to the defendant Akers does not mention a right-of-way.

The chancellor in his memorandum found, and we think the evidence supports his finding, that the defendant Akers has "nailed the bars that were across the gap to the post destroying the ingress and egress of complainant from Pickens Gap Road onto defendant's property.

* * *'' The chancellor, in his well-written memorandum, made these further findings:

"The Court found that the property of complainant actually fronted on a road to the East of complainant's property known as Knight Road and that complainant is and has been using Knight Road and his private drive leading thereto for a number of years and probably since at least 1953 as his principal means of ingress and egress from his home. It was stipulated by the parties that, four years after the entry of the Decree above referred to, that is in 1936, because of the bad state of repair of Knight Road the rural star mail route ceased to use Knight Road to service the complainant's property and it became necessary for complainant to place his mailbox at the right-of-way entrance from defendant's property in order to obtain his mail delivery. It was further stipulated that the rural star mail route, apparently because of the improvement of Knight Road, ceased its delivery of mail to complainant's mailbox on Pickens Gap Road and commenced redelivery to complainant on Knight Road in 1953. Certainly, the deed for the use of this right of way by complainant increased immeasurably four years after the entry of the Final Decree in the first action by the change of the mail route in 1936 and continued greater than that referred to in said Final Decree through 1953.

"It is true that complainant's home is located much closer to his Knight Road exit than to the Pickens Gap Road exit. However, the proof shows, and the Court so found, that the Knight Road exit was considerably further from complainant's barn than the Pickens Gap Road exit and that the terrain made the Pickens

Gap Road right-of-way much more usable than the terrain leading to the Knight Road exit.''

The proof further shows that complainant's property fronts for more than 1,000 feet along Knight Road which was improved and paved in 1953. Complainant testified his home faces and is within 300 feet of Knight Road. There is little or no dispute that complainant's main way of ingress or egress is now by way of Knight Road. Futhermore, the bridge complainant had across a gully or creek on the right-of-way has rotted out. Also, the right-of-way is now grown up and contains several old automobiles or parts thereof and other trash. The chancellor found and the proof conclusively shows that in the past few years the complainant had only sporadically used the right-of-way.

The chancellor then went on to find that a right-of-way was properly and legally created across defendant's property and same had not been abandoned, and that the defendant would be permanently enjoined from interfering with complainant's further use. If this right-of-way had been acquired by any other means than of necessity, we would be inclined to agree with the chancellor. The 1932 decree makes a finding ''that at certain times of the year is the only means of ingress and egress.'' This decree clearly states the sole basis of the right-of-way or easement over the property was granted as one of necessity.

In 28 C.J.S. Easements sec. 54b, at page 718 is found the following:

''While ordinarily a right of way of necessity continues until some other lawful way has been acquired, and cannot be extinguished so long as the necessity con-

tinues to exist, nevertheless, a way of necessity ceases as soon as the necessity to use it ceases. Accordingly, a right of way of necessity ceases when the owner of the way acquires a new means of access to his estate, as where he acquires other property of his own over which he may pass, or where a public way is laid out which affords access to his premises; and the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be absolutely necessary."

For similar statements of the law see 17 Am.Jur. page 1023 and the annotation in 154 A.L.R. 33.

In the case of McGiffin v. City of Gatlinburg, 195 Tenn. 396, 260 S.W.2d 152, our Supreme Court recognized the above doctrine and quoted from Washburn's Treaties on Easements, 3rd ed. p. 654, saying: "If an easement for a particular purpose is granted, when that purpose no longer exists there is an end of the easement."

We think the above authorities are applicable and controlling in this case. Since the proof shows that the improvement of Knight Road now affords complainant an access to his premises, it must be said the purpose for which the right-of-way of necessity that was granted by the court in 1932 no longer exists. Since there has been a completion of purpose for which the right-of-way was granted, there can be no reason or necessity for continuing such a servitude upon defendant's property. A new means of access provided to complainant is reasonably sufficient for him to have a beneficial enjoyment of his property. Hence this brings about a termination of his easement of necessity across property of the defendant.

Thus the decree of the chancellor is reversed and complainant's original bill dismissed with the costs incident to this appeal taxed to complainant.